DECISION AND JUDGMENT ENTRY
{¶ 1} This cause comes on appeal from the Municipal Court of Oregon, Lucas County, Ohio, which denied appellant's motion to seal the record of his conviction. Appellant, Dennis J. Haas, was previously convicted of disorderly conduct, a violation of Oregon Municipal Code 509.03 and a misdemeanor of the fourth degree.
 {¶ 2} Two journal entries began and ended this matter in the trial court. The first states: "Motion for expungement filed by [appellant's counsel]." The second entry, dated October 4, 2004, consists of a near-illegible scrawl: "Motion * * * expungement * * * Motion is denied." No transcript was made of the hearing of appellant's motion. Instead, appellant's counsel has filed a "Statement of the Evidence of Proceeding When No Report Was Made or When the Transcript is Unavailable." The trial judge who heard appellant's motion has approved the Statement; appellee was not present at the hearing on appellant's motion and has not objected to the filing of the statement. The statement in total is written as follows:
 {¶ 3} "The case was called by the Trial Judge. Defendant and Defendant's counsel approached the podium and stated that the matter before the Court was a Motion for the Expungement of the Record of the Defendant. Defendant's counsel informed the Court that the Defendant had no prior criminal record; that no conviction of any type had ensued subsequent to his conviction of disorderly conduct pursuant to Section509.03 of the Oregon Municipal Code; and that there had been no report submitted to Defendant's counsel from either the Probation Department, nor the Prosecutor's Office, objecting to the expungement.
 {¶ 4} "The Trial Judge then stated: `Motion denied.' Defendant's counsel inquired: `Your Honor, may I have the reasons for the denial of the Motion?' The Court responded: `Motion denied.'
 {¶ 5} "The proceedings were thereupon concluded and Defendant and Defendant's counsel left the courtroom."
 {¶ 6} Appellant asserts the following sole assignment of error:
 {¶ 7} "THE TRIAL COURT ERRED IN DENYING DEFENDANT/APPELLANT'S MOTION TO SEAL HIS RECORD PURSUANT TO OHIO REVISED CODE SECTION 2953.31 THROUGH 2953.35."
 {¶ 8} We note at the outset some principles which should guide decisions to seal an applicant's criminal record. R.C. 2953.32, which governs expungement proceedings, emphasizes an applicant's interest in having his record sealed from the public. State v. Krutowsky, 8th Dist. No. 81545, 2003-Ohio-1731, at ¶ 10, citing State v. Greene (1991),61 Ohio St.3d 137. The expungement provisions are remedial in nature and "must be liberally construed to promote their purposes." State ex rel.Gains v. Rossi (1999), 86 Ohio St.3d 620, 622. As one appellate decision aptly framed the philosophy underlying expungement: "[P]eople make mistakes [and] afterwards they regret their conduct and are older, wiser and sadder. The enactment and amendment of R.C. 2953.31 and 32 is, in a way, a manifestation of the traditional Western civilization concepts of sin, punishment, atonement, and forgiveness. Although rehabilitation is not favored in current penal thought, the unarguable fact is that some people do rehabilitate themselves." State v. Hilbert (2001),145 Ohio App.3d 824, 827.
 {¶ 9} However, it is also clear that the applicant's interest in putting a regrettable and truly regretted incident to rest is neither decisive nor generates a substantial right. "Neither the United States Constitution nor the Ohio Constitution endows one convicted of a crime with a substantive right to have the record of a conviction expunged. Instead, expungement is an act of grace created by the state." State v.Hamilton (1996), 75 Ohio St.3d 636, 639. The descriptor "grace" is telling: Although atonement may be authentic, some courts may (boldly) view granting an application as "unmerited divine assistance given humans for their regeneration or sanctification."[1]
 {¶ 10} Appellant's arguments focus on the trial court's decision not to make available any investigation reports prior to the hearing and the failure to make any information or investigation reports part of the record. Appellant founds his arguments on a due process right to information; however, the Ohio Supreme Court has made clear that due process rights are limited in expungement proceedings because "expungement hearings are not structured on the adversary model." State v. Hamilton,
supra, at 640. Therefore, "the process due an applicant for expungement does not include advance notice of the specific issues and facts underlying a prosecutor's objection or even notice that the state opposes the sealing of the record." Id. Appellant notes in his brief that allowing an applicant access to information prior to a hearing is a matter of common local practice in other jurisdictions. This practice is a matter of discretion: Although we may believe that access to information best facilitates a smooth non-adversarial proceeding, it is not generally within this court's power to mandate the exercise of discretion in this area.
 {¶ 11} We do find error, however, in the trial court's adherence to R.C. 2953.32(B), which provides in part: "Upon the filing of an application under this section, the court shall set a date for hearing and shall notify the prosecutor for the case of the hearing on the application." This language requires the judge to hold a hearing before granting an application to seal records under R.C. 2953.32. It is error to grant such application without holding a hearing. State v. Powers, 8th Dist. No. 84416, 2004-Ohio-7021, at ¶ 3. See also State v. Saltzer
(1984), 14 Ohio App.3d 394, syllabus, stating: "The requirement of a hearing set forth in R.C. 2953.32(B) is mandatory and each application for expungement must be set for hearing."
 {¶ 12} Although the trial court held a hearing, the manner in which the hearing was held did not comport with R.C. 2953.32(C), which relevantly provides:
 {¶ 13} "(C)(1) The court shall do each of the following:
 {¶ 14} "(a) Determine whether the applicant is a first offender or whether the forfeiture of bail was agreed to by the applicant and the prosecutor in the case. * * *
 {¶ 15} "(b) Determine whether criminal proceedings are pending against the applicant;
 {¶ 16} "(c) If the applicant is a first offender who applies pursuant to division (A)(1) of this section, determine whether the applicant has been rehabilitated to the satisfaction of the court;
 {¶ 17} "(d) If the prosecutor has filed an objection in accordance with division (B) of this section, consider the reasons against granting the application specified by the prosecutor in the objection;
 {¶ 18} "(e) Weigh the interests of the applicant in having the records pertaining to the applicant's conviction sealed against the legitimate needs, if any, of the government to maintain those records." R.C.2953.32(C).
 {¶ 19} R.C. 2953.32 requires a trial court to construe the statute so as to promote the legislative purpose of allowing expungements when weighing the applicant's interests against the state's. See also Statev. Hilbert, at 827. This mandate requires a trial court's exercise of discretion. Appellee's arguments are sound insofar as a trial court has significant latitude to determine whether an applicant's interest in receiving "grace" outweighs that of the state. Several appellate courts have found that, although trial courts are given wide latitude in the exercise of that discretion, it may not happen so as to preclude appropriate appellate review.
 {¶ 20} "[A]n abuse of discretion involves far more than a difference in * * * opinion * * *. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an `abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." State v. Jenkins
(1984), 15 Ohio St.3d 164, 222.
 {¶ 21} We find the trial court abused its discretion when it conducted appellant's "hearing" in the fashion it did. Indeed, what transpired renders the word "hearing" meaningless for the purpose of appellate review; it was equivalent to no hearing at all. An appellate court cannot determine whether an abuse of discretion occurred — as we are directed to do — if the exercise of that discretion is not demonstrable. If it were otherwise, a trial court could sidestep appellate review of its discretion by never recording anything capable of review. Such discretion would not be merely shielded — it would be absolute — and appellate courts would be left to wonder whether "passion or bias" existed in the determination. This is one matter in which we cannot simply presume the regularity of the proceedings on a silent record.
 {¶ 22} Appellate courts have recently reversed a trial court's decision to deny an application pursuant to R.C. 2953.52 due to a failure to place the required findings on the record for review. City ofYoungstown v. Sims (October 31, 1996), 7th Dist. No. 96-CA-26, presents nearly identical facts: After a hearing at which no witnesses were presented and the prosecutor filed no objections, the trial judge signed a journal entry stating "motion for expungement denied." In reversing, the trial court was ordered to "conduct the hearing and determine the facts required by R.C. 2953.32(C)(1) and (2). It is further ordered that these findings be expressed in a judgment entry of the trial court." Id. at 4. See also City of Cleveland v. Hogan, 8th Dist. No. 85214, 2005-Ohio-3167, at ¶ 12 (pursuant to a R.C. 2953.52 application).
 {¶ 23} Ohio courts have, in other instances, required trial courts to demonstrate the exercise of their discretion on the record in order to facilitate meaningful appellate review. For example, the Ohio Supreme Court requires findings on the record when granting or denying a motion for a new trial, for the express purpose of appellate review: "[W]ithout some articulated basis for granting a new trial, the trial court's decision is virtually insulated from meaningful appellate review. As previously stated, an appellate tribunal will not reverse the trial court's ruling absent an abuse of discretion. However, when the trial court offers no reasons for its decision, the court of appeals practically must defer to the trial court's conclusion that the verdict was against the weight of the evidence." Antal v. Olde Worlde Products,Inc. (1984), 9 Ohio St.3d 144, 146.
 {¶ 24} For those reasons, appellee's argument that a trial court has wide discretion in ruling on a motion to seal the record of a conviction fails to persuade in this instance. Although the record does include documentation as to the nature of appellant's offense, we do not accept appellee's assertion that the exercise of discretion permits us to simply guess what the trial court may have been thinking when considering the nature of the offense. Moreover, contrary to appellee's assertions, the nature of the offense an applicant seeks to expunge cannot provide the sole basis to deny an application. See e.g., State v. Hilbert, supra (aggravated arson for act of cross-burning); State v. Berry (1999),135 Ohio App.3d 250, 253 (reversed for failure to hold a hearing and on the separate basis of error to "summarily and categorically [deny] the application because the matters investigated were sex offenses."); In theMatter of: Nina M. Byrd, supra (sex offense); State v. Bates, 5th Dist. No. 03-COA-057, 2004-Ohio-2260, at ¶ 26 (reversed where gambling addiction was sole basis for denying expungement of theft offense).
 {¶ 25} In addition, res judicata separately buttresses a requirement that trial courts place findings made pursuant to R.C. 2953.32 on the record for review. Applicants for expungement are precluded from filing successive applications in most instances. The one-time nature of expungement applications enhances, in our view, the necessity of clarity in the trial court's exercise of discretion. See e.g., State v. Haney
(November 23, 1999), 10th Dist. No. 99AP-159, holding successive applications barred unless circumstances change beyond the "mere passage of time." The relatively short window in which to apply for an expungement thus increases the likelihood that successive applications would be barred.
 {¶ 26} For the foregoing reasons, appellant's sole assignment of error is well taken. This matter is reversed and remanded to the trial court for further proceedings consistent with this decision. As in City ofYoungstown v. Sims, supra, the trial court should conduct another hearing, determine facts as required by R.C. 2953.32, and express the facts and reasons for its determination in a judgment entry. Appellee is ordered to pay the costs of this appeal for which sum judgment is rendered against appellee on behalf of Lucas County and for which execution is awarded. See App.R. 24.
Judgment Reversed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Skow, J., Parish, J. Concur.
[1] Merriam Webster's Collegiate Dictionary (10th ed. 1996).